UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GEO. M. MARTIN COMPANY, GEORGE R. MARTIN, MARRILL D. MARTIN, LILLIAN MARTIN, MERRILYN NOBLE, PATRICIA CURTIS, NELLIE GILES, and GARY FORDE by and through his conservator, MARY ROBERTS, | Civil No. 04-2725 (PJS/JJG) |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ROYAL INSURANCE COMPANY OF AMERICA and ROYAL SPECIALTY UNDERWRITING, INC., | |
| Defendants. | |

Ricardo Echevarria and Michael J. Bidart, SHERNOFF BIDART & DARRAS, LLP, 600 South Indian Hill Boulevard, Claremont, CA 91711; Lori L. Burgan and Paul D. Peterson, HARPER & PETERSON, PLLC, 3040 Woodbury Drive, Woodbury, MN 55129, for the plaintiffs.

Ted E. Sullivan and William L. Davidson, LIND JENSEN SULLIVAN & PETERSON, PA, 150 South Fifth Street, Suite 1700, Minneapolis, MN 55402, for the defendants.

This matter is before the Court on the parties' cross-motions in limine regarding whether California or Minnesota law governs this diversity case. The parties are primarily concerned about the issue of damages — and, in particular, about whether the plaintiffs can seek punitive damages. The plaintiffs argue for the application of California law, which would permit them to seek punitive damages. The defendants argue for the application of Minnesota law, which would

not. For the reasons described below, the Court agrees with the plaintiffs that California law applies.

## I.  BACKGROUND

Plaintiff Geo. M. Martin Company ("Martin") is a California company with its principal place of business in Emeryville, California. Martin manufactures stacking machinery for use in the paper-processing industry. On March 10, 1999, Gary Forde ("Forde"), a resident of Wisconsin, was seriously injured while working with a Martin stacker at his employer, Inland Paperboard and Packaging, Inc. ("Inland Paper") in Shakopee, Minnesota. Forde, through his conservator, sued Martin (and others) in Minnesota state court.

Martin tendered defense of the suit to its primary insurer, Federal Insurance Company ("Federal"), and to its excess carrier, Royal Insurance Company of America ("Royal"). Martin had $1 million in coverage under its primary policy with Federal and $15 million in coverage under its excess policy with Royal. Federal retained counsel to defend Martin.

In March 2002, Martin, Forde, and Federal entered a settlement agreement known as a *Loy-Teigen* agreement. *See Loy v. Bunderson*, 320 N.W.2d 175 (Wis. 1982); *Teigen v. Jelco of Wis., Inc.*, 367 N.W.2d 806 (Wis. 1985). Under that settlement, Federal agreed to pay the $1 million limits of its policy to Forde. In return, Forde agreed not to seek punitive damages against Martin. Forde also agreed that if a jury returned a verdict against Martin in an amount exceeding the $15 million limits of the Royal policy, Forde would limit his recovery to the policy limits. In other words, the *Loy-Teigen* agreement guaranteed that Martin would have no personal liability.

In effect, the *Loy-Teigen* agreement also guaranteed that Royal would have no liability beyond the $15 million limits of its policy. Because Martin was protected from personal liability, nothing that Royal could do in defending the Forde lawsuit — whether in good faith or in bad — could harm its insured. Therefore nothing that Royal could do in defending the Forde lawsuit could expose Royal to bad-faith liability. As Martin explained to Judge Isabel Gomez (the judge presiding over the Minnesota action) when seeking her approval of the *Loy-Teigen* agreement:

> The benefit to Royal [of the *Loy-Teigen* agreement] is that it is relieved of any bad faith excess exposure. In other words, Geo. M. Martin Company will have no basis for a claim for bad faith against Royal if the verdict exceeds the available insurance coverage because Geo. M. Martin Company cannot be liable under the Agreement for any amounts in excess of its insurance coverage.

*Geo. M. Martin Co. v. Royal Ins. Co. of Am.*, No. C 03-5859 SI, Order at 6 (N.D. Cal. May 14, 2004) (quoting documents submitted in the state-court action).

Judge Gomez approved the *Loy-Teigen* agreement on March 8, 2002. At that point, the legal status of the parties was clear: Forde had the right to try his claim against Martin. Royal had an obligation to defend that claim. Forde could not seek punitive damages. If Forde recovered less than $15 million in compensatory damages, Royal would have to indemnify Martin for the amount of the recovery. If Forde recovered more than $15 million in compensatory damages, Martin's liability — and thus Royal's obligation to indemnify — would be limited to $15 million.[1]

---

[1] For the sake of simplicity, the $1 million paid by Federal will be ignored. Technically, though, Forde could recover up to $16 million of any verdict, as $1 million would be paid by Federal and $15 million by Royal.

The case proceeded uneventfully until shortly before trial, when Forde discovered that Martin had been hiding highly prejudicial documents. Two things about Martin's conduct in hiding these documents must be stressed. First, Judge Gomez deemed Martin's conduct to be, in her words, an "astonishing violation of this Court's discovery rules," and she specifically found that "Martin's deceit was intentional and was not a matter of inadvertence." Peterson Aff. Ex. E at 6-7. Martin insists that Judge Gomez was wrong, but Judge Gomez was an unbiased observer who presided over all phases of the Minnesota litigation, including the discovery phase. Second, Martin was itself responsible for this behavior. Royal was not in any way to blame.

When Martin's deception became clear, Forde was understandably incensed, and Forde asked Judge Gomez to set aside the *Loy-Teigen* agreement. Judge Gomez took Forde's motion under advisement. She started the trial, and she allowed Forde's attorneys to inform the jury about Martin's deceit in hiding the documents. Moreover, in Judge Gomez's words, Forde's attorneys were able to use those documents "to devastating effect." Peterson Aff. Ex. E at 7.

For obvious reasons, Martin got increasingly nervous as the trial progressed. Martin was doing poorly at trial, as its witnesses were getting pummeled by Forde's attorneys. At the same time, Martin's protection against personal liability under the *Loy-Teigen* agreement was in doubt, as Forde's motion to set aside that agreement was pending. Martin pleaded with Royal to settle the case. According to Martin, Royal was deaf to its pleas and acted in bad faith in failing to make reasonable efforts to settle the case. According to Royal, it did make reasonable efforts to settle the case, but Forde's demands far exceeded any reasonable estimate of the settlement value of the case. For whatever reason, the case did not settle.

On September 30, 2002, the jury returned a verdict against Martin of over $35 million — an enormous verdict for a personal injury action in Minnesota or anywhere else. To add insult to injury, Judge Gomez then agreed that Forde could seek *punitive* damages against Martin in a second phase of the trial while Judge Gomez continued to ponder the validity of the *Loy-Teigen* agreement. Peterson Aff. Ex. D at 6. Frantic settlement negotiations ensued, and a few days later the parties agreed to settle the action for about $21 million. Royal agreed to contribute its policy limits ($15 million) plus about $1 million for interest, and Martin agreed to contribute $5 million of its own funds. Martin also reserved its right to attempt to recover that $5 million from Royal in a bad-faith action. Martin further agreed that, if it recovered more than $5 million from Royal in a bad-faith action, it would give those proceeds to Forde.

It is important to note that, at the time that the parties reached this settlement agreement, Judge Gomez had not ruled on Forde's motion to set aside the *Loy-Teigen* agreement. That agreement, it will be recalled, protected Martin from personal liability to Forde. Thus, when Martin agreed to pay $5 million as part of the settlement, Martin was essentially protecting itself against the possibility that Judge Gomez would set aside the *Loy-Teigen* agreement, exposing Martin to roughly $20 million in personal liability for compensatory damages and to an unknown amount of personal liability for punitive damages. Of course, Martin had itself to blame — at least in part — for its predicament. If Martin had not committed the "astonishing" and "deceit[ful]" violations of Judge Gomez's discovery orders, then Forde would not have moved to set aside the *Loy-Teigen* agreement, and Martin would have had nothing to worry about.

When the case settled in October 2002, something approaching rough justice had arguably been achieved. Forde had received an enormous amount of money to compensate him

for his extremely serious injuries. Federal had paid its policy limits. Royal had paid its policy limits plus an extra $1 million. And Martin had paid $5 million of its own money to buy itself out of a jam largely caused by its own misconduct.

Rough justice was not good enough for Forde, however. In October 2003 — a year after the case settled — Forde moved to set aside the *Loy-Teigen* agreement, citing "mutual mistake." Judge Gomez denied that motion in February 2004. Peterson Aff. Ex. E. Forde did not appeal. In other words, Judge Gomez found — in a valid and binding ruling — that the *Loy-Teigen* agreement is valid and enforceable. Thus, Judge Gomez found that Forde had no right to recover punitive damages from Martin and no right to recover compensatory damages exceeding the $15 million limits of the Royal policy. Forde was thus fortunate to have recovered about $5 million more than he was entitled to recover under the *Loy-Teigen* agreement.

Rough justice was also not good enough for Martin. Despite the fact that it was Martin's own misconduct that caused it to have to contribute $5 million to the settlement, Martin brought this bad-faith action against Royal in a California state court. Royal removed the matter to federal court and successfully moved to transfer the matter to Minnesota. Martin argues that Royal is liable to it for the $5 million on the theory that, if Royal had acted in good faith to settle the Forde action within policy limits, the case never would have gone to the jury, and Martin never would have been asked to contribute to the settlement. Martin also seeks to hold Royal liable for punitive damages and for emotional distress. Martin can do so only if California law, and not Minnesota law, governs its dispute with Royal.

II.  ANALYSIS

The parties agree that, because this case was transferred from a federal court in California, the question of whether California or Minnesota substantive law applies is decided under California choice-of-law rules.  *See Ferens v. John Deere Co.*, 494 U.S. 516, 524-25 (1990).  California applies a governmental-interest analysis to determine which state's substantive law applies:

> In brief outline, the governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006) (citations and quotations omitted).

*A.  Same or Different*

The parties agree on the application of the first step of the governmental-interest test. Both California and Minnesota permit insureds to bring bad-faith claims against their insurers. But California permits insureds to recover a significantly broader array of damages.  Under Minnesota law, plaintiffs in insurance bad-faith cases are limited to recovering the amount of the verdict in excess of the policy limits.  Because the cause of action sounds in contract, neither punitive damages nor damages for emotional distress are available.  *See Short v. Dairyland Ins. Co.*, 334 N.W.2d 384, 389 (Minn. 1983); *Strand v. Travelers Ins. Co.*, 219 N.W.2d 622, 622

(Minn. 1974) (per curiam). Under California law, by contrast, a cause of action against an insurer for bad faith sounds in tort. Plaintiffs in such cases can recover punitive damages and damages for emotional distress. *See Gourley v. State Farm Mut. Auto. Ins. Co.*, 822 P.2d 374, 377 (Cal. 1991) (emotional distress damages); *Betts v. Allstate Ins. Co.*, 201 Cal. Rptr. 528, 540 (Cal. Ct. App. 1984) (punitive damages). There is no question, then, that the law of Minnesota is different from the law of California on the question of what damages are available in an insurance bad-faith case.[2]

### B. True Conflict

The second step of California's choice-of-law analysis requires the Court to determine whether the difference between the laws of the two states presents "a true conflict." *Kearney*, 137 P.3d at 922. The Court is required to identify "each jurisdiction's interest in the application of its own law under the circumstances of the particular case." *Id.* In this case, for example, the Court is required to identify the interest that California is attempting to further in permitting plaintiffs in bad-faith actions to recover punitive damages and damages for emotional distress. The Court is then required to identify the interest that Minnesota is attempting to further in denying those remedies in bad-faith actions. Finally, the Court is required to determine whether applying California law would in fact harm the interest furthered by Minnesota, and whether applying Minnesota law would in fact harm the interest furthered by California. Only if the answer is "yes" is there "a true conflict" between the differing laws.

---

[2]The parties also cite differences between California law and Minnesota law concerning the evidentiary value of the underlying verdict and the interest rate applicable to any recovery. Based on the Court's analysis below, it appears likely that California law will apply to those issues, but the Court will reserve a final ruling until trial.

In *Hurtado v. Superior Court of Sacramento County*, 522 P.2d 666 (Cal. 1974), the California Supreme Court addressed almost exactly the issue presented in this case. The survivors of a resident of Mexico who was killed in a car accident in California brought suit in a California court against residents of California. The law of Mexico limited the amount of damages recoverable in a wrongful death action; the law of California did not. The question was which jurisdiction's law applied.

Applying California choice-of-law doctrine, the California Supreme Court held that California substantive law would apply. The Court explained that "[t]he interest of a state in a tort rule limiting damages for wrongful death is to protect defendants from excessive financial burdens or exaggerated claims." *Id.* at 670. Such an interest is local in character because a damages limitation does not reflect a general policy in favor of denying full recovery to plaintiffs; instead, it is for the protection of resident defendants. *Id.* Because the defendants in *Hurtado* were not residents of Mexico (the jurisdiction that limited damages), the Court held that Mexico had no interest in having its limitation on damages applied. *Id.* at 670-71.[3]

The *Hurtado* analysis is dispositive of the choice-of-law issue in this case. Minnesota's interest in limiting damages in an insurance bad-faith case is not to deny full recovery to plaintiffs, but "to protect defendants from excessive financial burdens or exaggerated claims." *Id.* at 670. This interest is "primarily local in character." *Id.* at 672. Minnesota obviously has a strong interest in protecting *Minnesotans* from excessive verdicts, but it has little interest in protecting the residents of other states. Here, Royal is not incorporated in Minnesota and does

---

[3]In *Kearney*, the California Supreme Court discussed *Hurtado* at length and cited its analysis with approval. *Kearney*, 137 P.3d at 923-24.

not maintain its principal place of business here. (The same is true of Royal's co-defendant, Royal Specialty Underwriting, Inc.) Indeed, there is not a single Minnesota resident involved in this case. Minnesota simply has no interest in applying its defendant-protecting limitations on damages in a case that does not involve Minnesota defendants.

The presence of the *Loy-Teigen* agreement does not alter the analysis. The enforceability of that agreement under Minnesota law is indeed relevant to this case, but only in a roundabout way. The reasonableness of Royal's efforts to settle the Forde claim will be assessed under the circumstances existing at the time. One of those circumstances is the likelihood that the insured — Martin — would be exposed to personal liability. Martin will no doubt argue that, at the time of the Forde trial, the validity of the *Loy-Teigen* agreement was in serious doubt, meaning that Martin was exposed to significant personal liability, meaning that Royal had to vigorously pursue a settlement within policy limits. Royal will no doubt respond that the validity of the *Loy-Teigen* agreement was not in serious doubt, meaning that Martin was not exposed to significant personal liability, meaning that Royal had more flexibility to "gamble" on a jury verdict. This is essentially a factual issue that this Court is capable of addressing. The existence of this factual issue does not give Minnesota a strong interest in applying its law barring punitive damages and damages for emotional distress in insurance bad-faith actions.[4]

In contrast to Minnesota's weak interest in protecting out-of-state insurers from excessive judgments, California has a strong interest both in ensuring that the plaintiffs here are fully

---

[4]Royal also argues that Minnesota has an interest in ensuring that the *Loy-Teigen* agreement is enforced, and that any recovery by Martin in this action would abrogate that agreement. This may be an argument for dismissing Martin's claims altogether, but it is not an argument for applying Minnesota law on the scope of damages available in bad-faith actions.

compensated and in deterring wrongful conduct against them. Martin is a California company, incorporated under California law and maintaining its principal place of business in California. Most of the other plaintiffs are California residents. The insurance policy at issue in this case was issued in California to a California resident, and thus both the policy and the insurer who issued it were subject to a host of requirements imposed by California regulators and designed to protect California insureds. It defies common sense to claim that California has no interest in deterring an insurer's bad-faith failure to settle a lawsuit filed against a California policyholder.

Royal argues that California courts have held otherwise, citing *Denham v. Farmers Insurance Co.*, 262 Cal. Rptr. 146 (Cal. Ct. App. 1989) and *Zimmerman v. Allstate Insurance Co.*, 224 Cal. Rptr. 917 (Cal. Ct. App. 1986). But both of those cases are readily distinguishable because neither of those cases involved a California insured. Instead, the plaintiffs in each case were California residents who had filed tort actions against defendants who were *not* residents of California and who were attempting to assert third-party bad-faith claims against the insurers of those non-Californians.[5] *See Denham*, 262 Cal. Rptr. at 147; *Zimmerman*, 224 Cal. Rptr. at 917-18. In each case, the court rejected the plaintiffs' attempts to apply California law and instead applied the law of the forum in which the insured resided, because that forum's interest in applying its law was much stronger than California's. *See Denham*, 262 Cal. Rptr. at 148-49; *Zimmerman*, 224 Cal. Rptr. at 919-21. In this case, as in *Denham* and *Zimmerman*, the law that governs is the law of the state in which the insureds reside.

---

[5] In *Denham*, the plaintiffs were also able to assert a first-party bad-faith claim under Nevada law for reasons not relevant here. *See Denham*, 262 Cal. Rptr. at 149-52.

In sum, a "true conflict" arises under California choice-of-law doctrine only if both states have an interest in applying their laws. *Hurtado*, 666 P.2d at 670. Minnesota has little interest in limiting damages in a bad-faith action brought by non-Minnesota insureds against non-Minnesota insurers. Thus, there is not a "true conflict" between Minnesota law and California law. California law applies to the issue of damages, and Martin may seek punitive damages and damages for emotional distress from Royal.

The Court stresses that, in holding that California law applies to the issue of damages, the Court is merely holding that Martin can seek *permission* from the Court to ask the jury to award punitive damages or damages for emotional distress. The Court is in no way implying that it intends to *grant* that permission. To the contrary, based on the record now before the Court, Martin's claims for punitive damages and damages for emotional distress appear to be weak, and it is entirely possible that, after hearing the evidence introduced at trial, the Court will not permit those claims to be submitted to the jury. But that is an issue for another day.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The plaintiffs' motion in limine [Docket No. 93] is GRANTED to the extent that it seeks the application of California law to the issue of the scope of damages recoverable in this action. The Court reserves ruling on all other issues raised in the plaintiffs' motion.

2. The defendants' motion in limine regarding choice-of-law issues [Docket No. 103] is DENIED to the extent that it seeks the application of Minnesota law to the issue of the scope of damages recoverable in this action.  The Court reserves ruling on all other issues raised in the defendants' motion.

Dated: December _22_, 2006             s/Patrick J. Schiltz
                                                                           Patrick J. Schiltz
                                                                           United States District Judge